IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| FBR CAPITAL MARKETS & CO., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No.: 1:09-cv-1016 |
| ) | |
| KAREN SHORT, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Before the Court is Plaintiff FBR Capital Markets Corporation's ("FBR") Motion for a Temporary Restraining Order (Dkt. no. 4) against its former employee Karen Short. The Court finds that Plaintiff has failed to present sufficient evidence to warrant the granting of a temporary restraining order. In particular, Plaintiff has failed to meet the high burden of the "irreparable harm" element necessary for the granting of preliminary injunctive relief.

I.      **Background**

FBR is an investment bank which provides its clients with trading and brokerage services including market research and analysis designed to assist clients in making investment decisions. FBR is a Delaware corporation which is headquartered in Arlington, VA and has offices throughout the country. Karen Short is a citizen of New York. She is an equity research analyst who was employed by FBR in the Equity Research group from May 2006 to July 20, 2009. The Equity Research group is responsible for conducting research and analyzing data pertaining to various industries and publicly traded companies. Ms. Short was employed as a Senior Analyst

1

and Senior Vice President in the Consumer Group of Equity Research. More specifically, Ms. Short covered 15 stocks within the food retail industry.

In 2006 when Ms. Short was discussing employment with FBR she traveled to Arlington, VA to meet with FBR management. Throughout her three years working at FBR, Ms. Short attended employee training in Virginia and was given access to their emails systems and electronic databases which are located on information technology servers in Herndon, Virginia.

In September of 2008, FBR asked some of its analysts, including Ms. Short, to sign a covenant not to compete and non-solicitation agreement (the "Agreement"). On October 7, 2008 Ms. Short signed the Agreement. The Agreement required Defendant to provide FBR with written notice of her resignation ninety calendar days prior to her separation of employment with FBR. This ninety-day period is referred to as a "Notice Period" in the Agreement. The Agreement also contained a covenant not to compete which stated that during the Notice Period, or during ninety days from Defendant's termination date if she was terminated by FBR (the "Restricted Period"), Defendant was not to be employed by or engage in "any business that competes with FBR in the capital markets, financial advisory and/or institutional sales and trading business . . . in the same or similar capacity in which [she] provided those services at FBR." The Agreement further states that during the Restricted Period, a former employee "will not be employed or otherwise engaged by any client in any capacity which competes with or which may compete with FBR." Under the Agreement, FBR agreed to pay Defendant's full base salary and continue its cost-sharing arrangements for medical and dental insurance premiums throughout the ninety-day Notice Period. Additionally, as consideration for signing the Agreement, Defendant received restricted stock of FBR.

2

On or about July 20, 2009 Ms. Short informed her supervisor that she was leaving FBR to begin work with the Bank of Montreal ("BMO"). Specifically, Ms. Short took a position with BMO's investment banking group, BMO Capital Markets, which neither party disputes is a competitor with FBR. FBR exercised its authority under the Agreement to terminate Defendant's employment effective July 20, 2009. Defendant began employment with BMO in their Equity Research group as a Director, Research Analyst in the Consumer Group on July 21, 2009. On August 31, 2009 Ms. Short initiated coverage of her sector; she published ten, one-page statements concerning some of the companies she would be covering.

## II. Procedural History

On September 9, 2009 FBR filed a complaint against Karen Short alleging breach of contract and violation of the Virginia Uniform Trade Secrets Act. FBR claims Ms. Short breached her covenant not to compete, her non-solicitation agreement, and FBR's confidential and proprietary information policy by going to work for BMO immediately after termination of her employment at FBR. Additionally, FBR alleges that Ms. Short has misappropriated its confidential trade secrets in violation of the Uniform Trade Secrets Act, Va. Code § 59.1-366 *et seq*. FBR is requesting both injunctive relief and damages.

Also on September 9, 2009 FBR filed a motion for a temporary restraining order against Ms. Short requesting that the Court bar Ms. Short from working for BMO Capital Markets Corporation or any other FBR competitor for a period of ninety days from the date of entry of the order. On September 14, 2009, Defendant filed an opposition to Plaintiff's motion for a temporary restraining order. That same day the Court heard oral argument on Plaintiff's motion.

3

At the hearing, the Court took the motion under advisement. After consideration of the motion, the Court finds that Plaintiff has failed to meet its burden for a temporary restraining order.

## III. Jurisdiction and Venue

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 (diversity of citizenship) because the amount in controversy exceeds $75,000 and the dispute is between parties of different states.[1]

Defendant contends that her alleged contacts with the Commonwealth of Virginia are insufficient to establish personal jurisdiction. Under Fed. R. Civ. P. 4(d)(1)(A), a federal court is permitted to exercise personal jurisdiction in the same manner as the forum's state courts. Determining whether a person is subject to personal jurisdiction requires a two step analysis under Virginia law; a court must conclude (1) that jurisdiction is authorized by the state's long-arm statute, Va. Code. § 8.01-328.1; and (2) that an exercise of personal jurisdiction is consistent with the requirements of the Due Process clause of the Fifth Amendment of the United States Constitution. *Mitrano v. Hawes*, 377 F.3d 402, 406 (4th Cir. 2004) (citations omitted). There is really only one step, however, for all practical purposes in Virginia as the state's long-arm statute extends jurisdiction to the fullest extent permitted by Due Process. *Young v New Haven Advocate*, 315 F.3d 256, 261 (4th Cir. 2002) (internal citations omitted).

The Supreme Court has interpreted the Due Process Clause to require that the defendant must have "minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Id.* (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Where a defendant maintains systematic and continuous

---

[1] As alleged Plaintiff is a Delaware corporation with its principal place of business in Arlington, VA. Defendant, Karen Short, is a citizen of New York.

contact with Virginia, the court could exercise general personal jurisdiction over the defendant for his acts committed either inside or outside of Virginia. *D'Addario v. Geller*, 264 F. Supp. 2d 378, 378-379 (E.D. Va. 2003) (citing *Diamond Healthcare of Ohio, Inc. v. Humility of Mary Health Partners*, 229 F.3d 448, 450 (4th Cir. 2000)). To satisfy due process when evaluating specific jurisdiction over the nonresident defendant, the court must consider the nature and quality of the defendant's significant contacts with Virginia in relation to the specific cause of action. *Production Group Intern., Inc. v. Goldman*, 337 F. Supp. 2d 788, 793-94. Within the context of specific jurisdiction, the Fourth Circuit looks to the following:

> 1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; 2) whether the plaintiffs' claims arise out of those activities directed at the State; and 3) whether the exercise of personal jurisdiction would be constitutionally reasonable. *Mitrano v. Hawes*, 377 F.3d 402, 407 (4th Cir. 2004). As a general rule, due process is satisfied when a nonresident defendant purposefully conducts activities within the forum, benefits from the privileges and protections of the forum state, and as a result, has clear notice that he could be subject to suit there.

*Mitrano v. Hawes*, 377 F.3d 402, 407 (4th Cir. 2004) (internal citations omitted). As a general rule, due process is satisfied when a nonresident defendant purposefully conducts activities within the forum, benefits from the privileges and protections of the forum state, and as a result, has clear notice that he could be subject to suit there. *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

In this case Ms. Short purposefully availed herself of the privilege of conducting activities in the state by accepting and maintaining employment with a Virginia-based company, interviewing for employment in Virginia, and traveling to Virginia for training purposes. Additionally, the contact that Ms. Short had with Virginia is related to the plaintiff's claim against Ms. Short as this suit is over the terms of her employment with FBR, and any injury that

5

may have been caused by Ms. Short's departure from FBR would be felt by the company in Virginia. The Court finds that it has personal jurisdiction over the defendant under Virginia's long-arm statute, Va. Code § 8.01-328.1 and consistent with the dictates of due process based on her contacts with Virginia.

Defendant also contends that venue in the Eastern District of Virginia is improper. Under 28 U.S.C. § 1391(a), venue is proper in a case based on diversity jurisdictions in the following locations:

> 1) a judicial district where any defendant resides, if all defendants reside in the same state, 2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or 3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

The Fourth Circuit has noted that when determining whether a substantial part of the events or omissions giving rise to the claim occurred in a district, a court should not look just to those events that directly underlie the claim at issue, but "should review 'the entire sequence of events underlying the claim.'" *Mitrano*, 377 F.3d at 405 (quoting *First Mich. Corp. v. Bramlet*, 141 F.3d 260, 264 (6th Cir. 1998). Using the reasoning in *Mitrano*, this court has found venue appropriate when a claim against a nonresident defendant is brought by a plaintiff who is headquartered in the district and where the defendant had communications with and visits to the headquarters in the district. *Production Group Int'l*, 337 F. Supp. 2d at 798-799. The Court finds the facts in this case to be very similar to those in *Production Group Int'l* and concludes that the defendant's communications and contacts with Virginia come within the "sequence of events underlying the claim." Thus, the Court finds that venue in this district is appropriate.

## IV. Legal Standard

The grant of a preliminary injunction is an "extraordinary remedy . . .which is to be applied 'only in [the] limited circumstances' which clearly demand it." *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 811 (4th Cir. 1991). In *Real Truth about Obama v. Federal Election Commission*, 575 F.3d 342, 347 (4th Cir. 2009), the Fourth Circuit laid out the test for granting a preliminary injunction. The court held that in order for a plaintiff to succeed in obtaining a preliminary injunction, he must demonstrate the following: 1) that he is likely to succeed on the merits; 2) that he is likely to suffer irreparable harm in the absence of preliminary relief; 3) that the balance of equities tips in his favor; 4) that an injunction is in the public interest. *Real Truth about Obama*, 575 F.3d at 347.

The Court recognizes that Defendant raised issues as to whether or not Plaintiff satisfied the likeliness of success prong; however, the Court is not going to address that issue as it finds that Plaintiff has clearly not made an adequate showing of likelihood of irreparable harm and thus is not entitled to a preliminary injunction.

## V. Discussion

In order for a preliminary injunction to be awarded by the court, the plaintiff must show that it is likely to suffer irreparable harm in the absence of preliminary relief. *Real Truth About Obama*, 575 F.3d at 347. The Plaintiff has the burden of proving "a clear showing of immediate irreparable injury." *Direx*, 952 F.2d at 812 (citing *ECRI v. McGraw-Hill, Inc.*, 809 F.2d 223, 226 (3rd Cir. 1987)). Additionally, the "'clear showing' of irreparable harm to be suffered by the plaintiff from a denial of the relief must be both 'actual' and 'immediate.'" *Direx*, 952 F.2d at 812 (quoting *Dan River, Inc. v. Icahn*, 701 F.2d 278, 284 (4th Cir. 1983)). The Court finds that

7

Plaintiff has failed to make a clear showing of actual and immediate irreparable harm for three reasons.

First, Plaintiff has failed to show that they have suffered *any* harm as a result of Ms. Short's departure from the company. The Fourth Circuit has recognized irreparable harm when the failure to grant a preliminary injunction causes the loss of customers to a competitor or the loss of goodwill. *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bradley*, 756 F.2d 1048 (4th Cir. 1985). In this case, however, the Court finds that the Plaintiff has shown neither. In neither the affidavits nor pleadings submitted by Plaintiff nor in the testimony during the hearing on the temporary restraining order is there a clear showing of actual and immediate irreparable harm that will be done if the preliminary injunction is not granted. In arguing that it has been irreparably harmed, Plaintiff alleges the following in its Memorandum in Support of the Temporary Restraining Order:

> Not only has FBR lost its ability (at least in the short term) to cover the companies Ms. Short covered at FBR, but now risks an exodus of clients to BMO in search of Ms. Short's analysis. As a result of being exposed without having time to fill the gap Ms. Short left in its coverage, FBR stands to lose income not only from the lost trades on the companies that Ms. Short covers, but also on other trades made on other companies by the clients who follow Ms. Short to BMO.

Plaintiff alleges that there is a risk that they might lose customers and income, but there has been no actual showing that they have lost or that there is even a significant chance that they are going to lose either customers or income. Similarly, in the affidavit by Richard Hendrix, the CEO of FBR, he claims to state three ways in which FBR's business is hurt by Ms. Short working for BMO. He first states that without Ms. Short's analysis, the buying and selling of stocks that Ms. Short covers will fall off. Second, he discusses how companies such as FBR are rewarded by good research, and then *implies* that without Ms. Short, the business they got as a reward for

good research by Ms. Short will be reduced. Lastly, he discusses how clients rate firms such as FBR and BMO based, at least in part, on the quality of their analysis, and that this rating is used by clients to determine to which firms they should direct their trading. There is no actual assertion by Mr. Hendrix, however, much less any proof that clients are indeed reducing (or plan to reduce) their business with FBR as a result of Ms. Short's departure. The same is true of the testimony Mr. Hendrix gave during the hearing. He stated that clients would leave a company like FBR to follow an analyst like Ms. Short, but he could not say that they had left or are going to leave.

Second, even if Plaintiff has suffered harm from Ms. Short leaving FBR and going to work for BMO, it can be adequately compensated through damages. Plaintiff asserts that given the business model of the company it is very difficult to actually quantify the effect of one analyst, such as Ms. Short, leaving the company. Plaintiff tries to use this explanation both as an excuse for why it is unable to offer proof of the harm caused to the company and also as a reason why monetary damages would be insufficient. The Court finds both arguments unconvincing. The Fourth Circuit has held that "irreparable injury is suffered when monetary damages are difficult to ascertain or are inadequate." *Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.*, 22 F.3d 546, 551 (4th Cir. 1994) (quoting *Danielson v. Local 275*, 479 F.2d 1033, 1037 (2nd Cir. 1973)). However, as discussed above, Plaintiff has not been able to show *any* damages, and even if Plaintiff has suffered harm, the Court does not believe that the damages would be too difficult to ascertain or that they would not be adequate to compensate the company for any losses it has suffered.

When presented with a very similar case where analysts left one financial services institution to work for another, the District Court of Vermont acknowledged the plaintiff's assertion that there are many factors that affect the future revenue from a client account; but the court ultimately concluded that "a reasonable estimate of the damages can be made based on Merrill Lynch's records of the assets and commissions related to these accounts, similar records created by Wachovia for any accounts that are transferred, and expert testimony." *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Callahan*, 265 F. Supp. 2d 440 (D. Vt. 2003). If Ms. Short did breach the contract and FBR suffered damages as a result of that breach, the appropriate remedy is to seek damages through a breach of contract claim, not through the extraordinary remedy of a grant of a preliminary injunction.

Lastly, the Court finds that FBR's lack of urgency in replacing Ms. Short weighs against a finding of irreparable harm. FBR claims that it will be irreparably harmed if a preliminary injunction is not granted because it needs the ninety days called for in the Agreement to hire someone to replace Ms. Short and to give that new person time to "ramp-up" before beginning to cover the specific stocks. Ms. Short left FBR on July 20, 2009. Yet, it has been two months (two-thirds the length of the Restricted Period under the Agreement), and FBR has yet to replace her. Furthermore, FBR stated in the hearing for the preliminary injunction that it is not sure it is going to hire anyone to cover the specific stocks that Ms. Short covered. FBR cannot state that it will be irreparably harmed if Ms. Short is not enjoined from working for ninety days when the company will be in the same position after the ninety days whether the injunction is granted or not, because either way the company will not have employed a replacement for Ms. Short.

## VI. Conclusion

Based on the material before the court and for the reasons states above, Plaintiff's Motion for a Temporary Restraining Order is DENIED. An appropriate order shall issue forthwith.

ENTERED this 9th day of October, 2009.

Alexandria, Virginia

/s/
Liam O'Grady
United States District Judge